# Delp's Appeal.

1. A. contracted in writing to sell B. a certain tract of land, described in the contract, as containing 83 acres, more or less, for $9000, to be paid when the deed was delivered on or before April 1st, 1881; B. in the meantime to have the right to prospect for slate. The contract concluded as follows: If A. shall "find a purchaser for the property at the sum agreed upon, B. not having a buyer ready, he, the said B., will relinquish his right by A. paying B. his costs and reasonable charges in developing the property and in trying to sell the same, including $100 for his trouble; but no party shall claim a sale until one fourth of the purchase money is paid." On January 14th, 1881, A. conveyed the bulk of the property to C. for $9600, cash. B. afterwards filed a bill in equity to compel a conveyance to him, alleging performance and tender of performance of the written contract, in accordance with modified terms previous to A.'s sale to C. B. claimed that on January 10th, 1881, he and A. agreed by parol that instead of paying the consideration as provided in the written contract, B. should be credited on the purchase money with a note for $200, which he held against A.; that he should pay A. $300 before the following Tuesday and $3500 at the delivery of the deed, the balance to be secured by mortgage. The evidence before the Master of this parol agreement was, that the parties met on January 10th, 1881, and had a conversation in regard to the sale by A. to B. of "a farm." The terms of the sale were discussed, the method of payment, as above set out, and a witness called to witness the bargain. The written contract was not mentioned. The Master found that before A.'s sale to C. the written contract had been modified by parol, partly performed by B. in the modified form, and tender made of performance of the balance. He accordingly reported a decree in favor of specific performance. The court on exception, refused to sustain the Master's report and entered a decree for A.:

*Held,* That there was no error. The parol evidence was not sufficient to change the written agreement; and even as far as it went tended to prove a new and independent parol contract, which would not warrant a decree for specific performance.

2. There was a dispute between the parties as to whether the written agreement included a certain part of the land which had been divided into lots, and B. by his bill and testimony, claimed under oath that said lots were included. The Master, however, found and so reported, that B. was entitled to a decree for only 64 a. 148 p. instead of about 83 a., as claimed in his bill, and B. agreed to accept a conveyance for this amount.

*Held,* That B.'s tender to A. having been made on the basis of the claim set out in the bill, and not on the basis of the present claim, (for the number of acres found due him by the Master), was in conflict with his oath in the bills and with his testimony before the Master in support of it, and that B. therefore, did not appear with "clean hands" so as to move a chancellor to decree specific performance in his favor.

March 12th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

APPEAL from the Court of Common Pleas of *Northampton County:* In Equity: Of January Term, 1885, No. 102.

Bill in equity, by Samuel E. Delp against Joseph Delp et al., to compel the specific performance of a contract for the sale of land.   The defendants filed an answer to said bill and the cause was referred to Henry W. Scott, Esquire, as Master.

The following is an abstract of the bill and answer:   The bill set forth that Joseph Delp being seised of a certain slate property and tract of land situate partly in Washington and partly in Plainfield Townships, Northampton county, containing 83 acres and 160 perches in the said bill, more particularly described by metes and bounds, on March 18th, 1880, entered into a written contract or option (a copy of which was appended to the bill) for the sale of said land to plaintiff for $9,000, to be paid on or before April 1st, 1881.   That in the latter part of 1880, and also in January 1881, plaintiff being ready to take the property, as provided in the agreement, and having notified Joseph Delp thereof, the latter waived the payment of the $9,000 consideration, as provided in the agreement, and declared and agreed that plaintiff should be privileged to pay $4,000 thereof on or before April 1st, 1881, and the balance of the $9,000 should be payable in one year and be secured by mortgage upon said property.   The bill further alleges that possession was given to plaintiff in pursuance of the said agreement, and that improvements were made upon the property by plaintiff upon the faith of said agreement. .That after said plaintiff had agreed to take said land Joseph Delp had waived the manner of payment of the $9,000, as stated, and after plaintiff had entered into possession and expended money in making improvements in said property, Joseph Delp, on January 14th, 1881, sold and conveyed to Richard N. Merrill the greater part of said tract containing about 66 acres as in said bill described.   That said Merrill had notice of the contract between plaintiff and Joseph Delp and the possession taken and improvements made thereunder. That said sale to Merrill was made by Joseph Delp and Merrill with the intention of defeating plaintiff's right and equity. That a tender and offer of performance were made by plaintiff to Joseph Delp February 5th, 1881, in accordance with the contract and the change in time of payment of purchase money as stated in the bill, which was refused by Joseph Delp.   The bill then avers the willingness of plaintiff at all times to perform his part of said contract and concludes with a prayer that Joseph Delp and Merrill be decreed to specifically perform said contract and execute a proper deed for said premises.   Afterwards amendments were filed adding Joseph Bray, Henry Short and others as defendants and setting forth a conveyance from Merrill to Bray and Short of the part of the premises sold Merrill, by deed dated January 31st,

1881, which was not recorded until July 23d, 1881. That Bray & Short had employed Merrill to procure said property from Joseph Delp with the understanding that he was to get a deed for the same, and then convey it to Bray & Short. That Bray & Short then had knowledge and notice of the plaintiff's rights and equities as stated in the bill. That said conveyance was secretly made and concealed from plaintiff and not recorded until after the filing of the bill, when it first came to plaintiff's knowledge. The prayer of the bill was also amended so as to include Bray & Short in the prayer for specific performance and execution of a deed to plaintiff. Joseph Delp, in his answer to plaintiff's bill, admits his seisin of the land described in the bill, except, however, certain building lots which had been sold therefrom before he became the owner. That as to the written agreement set forth in the bill it was verbally understood and agreed at the time of its execution that the premises therein mentioned should not include certain lots numbering thirty. He admits that he sold and conveyed the 66 acres, tract of land mentioned in the bill, to Richard N. Merrill on the 14th of January, 1881, and avers that it was further agreed at the time of the making said agreement that Joseph Delp should have the right to sell the property as well as the plaintiff, and in case he did so he was to pay the plaintiff $100, which he declares his readiness to pay, and that so far as the agreement was written otherwise it was a mistake. The answer either denies or refuses to admit all the other allegations of the bill.

In a separate answer the remaining defendants deny any knowledge or notice of the contract between plaintiff and Joseph Delp, or of any of the other matters constituting the right or equity of plaintiff, as alleged in the bill. The answer further denies any conspiring or intention to defeat the equity of the plaintiff or mislead said plaintiff, and avers that the deed was executed and given publicly and without concealment or intention to mislead plaintiff or defeat his rights or equity in the premises.

The Master found as a fact that before the sale to Merrill the purchase money stipulations in the written agreement were changed by parol and that in their modified form they had been partly performed by the plaintiff and a tender made of full performance. The master accordingly recommended a decree that the defendants be compelled to specifically perform the agreement to convey as prayed for in the bill, except that the deed should be made for 64 acres and $148\frac{1}{2}$ perches, instead of the number claimed in the bill.

The opinion of the court, on exceptions filed to this report, was delivered by SCHUYLER, J., and contained the following:

It is the purpose of the present proceeding to obtain a decree for the specific execution of a contract respecting land. To a proper understanding of the points in controversy it will be necessary to refer briefly to the facts, some of which are undisputed and others are found by the Master.

On the 18th day of March, A. D. 1880, the plaintiff and Joseph Delp, one of the defendants, entered into written articles of agreement in which the said Joseph Delp agrees to sell the plaintiff or his assignees a certain tract of land, described in the agreement as containing eighty-three acres, more or less. The consideration mentioned is $9,000, which was to be paid when the deed was delivered, to wit: on or before the first day of April, A. D. 1881, and in the meantime the plaintiff was to have the privilege of prospecting on the land for slate.

The agreement closes with the following stipulations:

" And it is further agreed that if the said Joseph Delp should find a purchaser for the property at the sum herein agreed upon, Samuel E. Delp, not having a buyer ready he, the said Samuel E. Delp, will relinquish his right by Joseph paying Samuel E. Delp his cost and reasonable charges in developing the property, and in trying to sell the same, including one hundred dollars for his trouble ; but no party shall claim a sale until a fourth part of the purchase money is paid."

On January 14th, 1881, Joseph Delp conveyed the bulk of the property—the discrepancy in quantity is not material—to Richard N. Merrill, one of his co-defendants, for $9,600, cash, who in turn conveyed to Bray & Short, the other co-defendants. Down to and including the date of the sale to Merrill, the plaintiff had not paid or tendered Joseph Delp " a fourth part of the purchase money," which was, as has been seen, a condition precedent to his right to " claim a sale," so that if there were nothing more in the case it is clear that plaintiff would have no standing in court.

But it is contended, and the Master so finds, that before the sale to Merrill the purchase money stipulations in the written agreement were changed by parol and that in their modified form they have been performed in part, and as to the balance that there has been such a tender of performance by the plaintiff as to entitle him to the decree he is now asking. I regret to be compelled to disagree with the learned Master as to the first part of this finding. . . . . . The alleged change in the written contract is an inference from certain conversations between the parties and from admissions of Joseph Delp. The Master's account of what these conversations and admissions really were is accepted as verity. The inference he draws from them is alone called in question. . . . . . Now,

the Master finds that the parol modification of the written agreement was effected January 10th, 1881. On that day the parties were together and had a conversation in reference to the sale by Joseph Delp to the plaintiff of a "farm." Whether this farm is the same land included in the written agreement is left to the merest conjecture. The terms of sale were fully settled and assented to. It is true that the price was not expressly mentioned at the time, but it is clear that it was well understood by the parties. The plaintiff held a note against Joseph Delp for $200. This was to be given up and credited on the purchase money; $300 more were to be paid on the following Tuesday; $3,500 more on or before the first day of April, A. D. 1881, when the deed was to be delivered. The balance of the purchase money was to be secured by bond and mortgage.

It is safe to say that if this agreement had been reduced to writing, according to the plain understanding of the parties, and had been subscribed by them, nothing further would have been heard of the written agreement of March 18th, 1880. The parol agreement was complete without the previous written one. The written agreement was not once mentioned. Not a word was said about "option" or "refusal," a most important feature of the written agreement. On the contrary, it is manifest that the parties understood that they were entering into a new and independent contract. They call in a "witness to the bargain." On the day after the parol agreement the plaintiff, at the request of Joseph Delp, wrote a letter to a creditor of the latter, signing Joseph's name to it, in which he says: "I sold my farm yesterday." Moreover the plaintiff, by an indorsement on the $200 note, fixes January 10th, 1881, "as the time of the purchase." The foregoing are substantially all the facts bearing upon the question of the modification of the written agreement. We do not think that they justify the deduction drawn from them by the Master.

But even if it were otherwise, we still think that the plaintiff ought not to have a decree for specific performance. It is idle to say that the effect of the parol agreement was nothing more than a waiver of a condition precedent to be performed by the plaintiff. This might have been true if the written agreement had been for the sale of the land absolutely on payment of the purchase money within the time limited. But such was not its character. It was a mere option, and not even that pure and simple, for Joseph Delp reserved to himself the right to sell the land upon the same conditions—a very valuable right, as the result proved. But for the parol agreement the sale to Judge Merrill would have been valid beyond

question, and if that sale is not valid it is solely because the right to make it and the right to the consequent profit were taken away by the parol agreement. None of the decisions cited by the Master, or by the counsel for the plaintiff, cover such a case as this.

There is still another obstacle in the path of the plaintiff. In his bill he claims a deed for " 83 a., more or less." The tract of land described in the bill, it seems, contained 85 a. 84 p., but some six acres of this were sold off before the agreement and are not in dispute, leaving say 79 acres for which plaintiff says he is entitled to a deed. The Master allows him but 64 a. 148½ p. On the argument the plaintiff, through his counsel expressed a willingness to accept a deed for this quantity, persisting, however, that under the written agreement he is entitled to a deed for the whole 79 a. If, therefore, we follow the Master we will have to enforce specific performance of a contract different from that set out in the bill, and different from the one which, according to the plaintiff's own statement, was actually entered into between him and the defendant.

One other matter deserves passing notice. As stated above the Master finds that plaintiff is entitled to but 64 a. 148½ p. of land. This finding was excepted to by the plaintiff, but the exception was not pressed. The finding must therefore be accepted as correct. It has also been stated above that the plaintiff claims considerably more than the 64 a. 148½ p. He not only claims it, but before the Master he attempted to bolster up his claim by statements under oath which were persisted in with great tenacity. [To the effect that the written agreement also related to the land in excess of 64 a. 148½ p.] It would be charitable to believe that he was simply mistaken in these statements, but there is scarcely room for such a construction. This, therefore, is the position of trying to make an improper use of the written agreement. This may not be fraud, but it is enough to make a chancellor pause before granting the relief sought in the present bill. The plaintiff's hands are not clean.

Decree: bill dismissed with costs. Thereupon the plaintiff took this appeal assigning for error the decree of the court.

*W. S. Kirkpatrick* (with whom were *Chase & Mackey*), for appellant.—The agreement of March 18th, 1880 was an agreement by Joseph Delp to sell to Samuel Delp a certain piece of land described, upon an election or acceptance by Samuel, which was to be exercised by him at any time until April 1st, 1881. Samuel notified Joseph of his acceptance of the option, on January 10th, 1881, and before Joseph's con-

veyance to Merrill. True, this acceptance was in accordance with the terms of the parol agreement in regard to the time of payment of the price. There was no change made by parol, in the vendor's written contract, but simply a modification of the time or manner of the payment of the purchase money by the vendee. This did not affect plaintiff's right to the written agreement: Vicary *v.* Moore, 2 Watts, 451; Green *v.* Roberts, 5 Wh., 84; McManus & Henry *v.* Cassidy, 16 Sm., 260; Bridge Co. *v.* M'f'g Co., 2 N., 517; Ellmaker *v.* Franklin Fire Ins. Co., 6 W. & S., 443; McCombs *v.* McKennan, 2 W. & S., 216; Lawall *v.* Rader, 12 H., 283.

Nor is the criticism just that the complainant was in the position of one making an improper use of the written agreement, and it shows a total misunderstanding on the part of the court of the plaintiff's present position. The plaintiff was justified in believing that Joseph Delp had agreed as set forth in the plain terms of his written contract.

The Master also finds that we are entirely free from any taint. Because, however, the evidence might raise a sufficient doubt in the chancellor's mind as to whether Joseph Delp might not have misunderstood the scope of the description of the subject matter, and considered that the lots at the upper end, beyond the road, were excluded, we declared our willingness to take what he admitted was intended, and stated the above as our grounds for accepting such a decree.

*F. H. Lehr,* for Joseph Delp.—*Edward J. Fox & Son* (with whom was *John C. Merrill*), for Merrill, Bray & Short.—The agreement as written, which is claimed to be the foundation of this suit, has this as a part thereof, "and will on or before the first day of April, A. D. 1881, on the receipt of the said sum of $9,000, execute a proper conveyance thereof." And also, "but no party shall claim a sale until a fourth part of the purchase money is paid."

The Master, in his report, seeks to change this agreement by parol thus: "The purchase money shall be paid as follows: "Samuel Delp shall pay: a promissory note dated, Bangor, December 4th, 1880, for $200, payable one day after date. Five hundred dollars of the purchase money, including above $200 note, was to be paid on or before January 18th, 1881; $4,000 to be paid on or before April 1st, 1881, including said $500, and the balance of $5,000 to be secured by mortgage payable in one year." And the Master fails to say that one fourth of the purchase money must be paid before either party can claim a sale. In other words, according to the written agreement one fourth of the purchase money must be paid down before the sale shall be claimed. The balance

of the $9,000 shall be paid down on or before the first day of April, A. D 1881. The new agreement claims a sale without the payment of a single dollar; it compels Joseph Delp to take a promissory note of $200, and a mortgage upon the property due one year after date for $5,000, and to receive in cash on or before April 1st, 1881, only $4,000.

This, we submit, is a plain violation of the law that " courts of equity will not entertain bills for specific performance of contracts with variations or additions or new terms to be made and introduced into them by parol." This is more than a mere postponement of the time of payment, even though for that no authority can be found; that is where the time of payment is actually fixed and it is proposed to change the time by parol; this cannot be done so that specific performance will still be enforced. Much less can Joseph Delp be compelled by a parol change to accept a note of $200 and a mortgage of $5,000 payable one year after date, when it was to be $9,000 cash on or before April 1st, 1881.

This would become a parol agreement. According to the authorities, a written agreement varied by parol becomes altogether parol, and the Statute of Frauds would prevent its enforcement. " That is not a written contract, that is not self-sustaining. It is verbal if it requires verbal testimony to sustain it by proving any essential part of it. The decisions are numerous upon this point and there can be no escape from its conclusion: " Soles *v.* Hickman, 8 Harris, 183, and cases there cited; Hammer *v.* McEldowney, 10 Wr. 334, Bis. Eq., § 381.

There can be no doubt that the change of the written agreement claimed by complainant to have been made by parol—even if granted—would be sufficient to prevent specific performance: Story's Eq. page 91, § 770 n. 1; Townshend *v.* Stangroom, 6 Ves., 328; Brooks *v.* Wheelock, 11 Pick., 439; Dwight *v.* Pomeroy, 17 Mass., 328; Woollam *v.* Hearn, 7 Ves., 211; Hammer *v.* McEldowney, 10 Wr., 334; Story's Eq. § 767; Whiteaker *v.* Vanschoiack, 5 Oreg., 113; Jones *v.* Pennel, 1 Phila., 539; Wilgus *v.* Whitehead, 6 W. N. C., 537; White & Tudor's Leading Cases, Vol. 2, part 1, p. 920 et seq.

The opinion of the court was filed March 23d, 1885.

PER CURIAM.—Whatever might be the result in a common law action, we are clearly of the opinion that the parol evidence is insufficient to change the written agreement. The evidence so far as it goes, tends to prove a new and independent parol contract, rather than any change of an existing written contract. It is true the appellant is willing

to accept a conveyance of a less number of acres than he claimed in the bill filed. If that was the only difficulty in the case perhaps a decree for the lesser number might be sustained. There are several other objections. Among them is the fact that the tender was not made on the basis now claimed. This claim is not only in direct conflict with his oath in the bill filed, but also with his testimony before the Master. Conceding he was honestly mistaken, yet it presents a case which is insufficient to move a chancellor to decree specific performance of the alleged contract.

Decree affirmed and appeal dismissed at the costs of the appellant.